J-S32013-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MATTIE PITTMAN | : | |
| | : | |
| Appellant | : | No. 1220 EDA 2018 |

Appeal from the Judgment of Sentence March 19, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008404-2016

BEFORE: SHOGAN, J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY SHOGAN, J.: **FILED OCTOBER 17, 2019**

Appellant, Mattie Pittman, appeals from the judgment of sentence entered following her convictions of aggravated assault, simple assault, recklessly endangering another person ("REAP"), and various firearm violations. We affirm.

The trial court summarized the factual history of this case as follows:

> Dorothy Howell, sixty-one years old, testified that on August 29, 2016, at around 1:00-1:30am, she received a phone call from her younger sister ([Appellant]). (N.T. 9/8/17 at pp. 9-12). [Appellant], who did not live with Dorothy, informed Dorothy that she was outside her home. (*Id.*) [Appellant] told her that she was there to say a prayer, as Dorothy's grandson had just been killed and Dorothy's husband was in the hospital. (*Id.* at 12, 14). Dorothy let her in. (*Id.* at 12).

> Once [Appellant] was inside she said a prayer, but then told Dorothy, "Let me see your phone to see if I dialed the right number." (*Id.* at 12). Dorothy responded, "Mattie, that is the right number; you just called me." (*Id.*). Immediately, [Appellant] jumped up, pinned Dorothy down, and repeatedly

punched Dorothy in the face and the chest. (*Id*. at 12, 16, 17, 23). She also began accusing Dorothy of sleeping with a man that [Appellant] was friends with. (*Id*.). Dorothy had no idea who or what [Appellant] was talking about. (*Id*. at 12).

[Appellant] then pulled a small, black and yellow, .22 caliber gun out of her pocketbook, pointed it at Dorothy from only one to two feet away, and said "Shut up you no good, stinking bitch. You're fucking my friend." (*Id*. at 13, 22). She also threatened "Shut the F up...before I blow your head off." (*Id*. at 18, 20). Dorothy responded "Mattie, you about to kill me about a man? I don't even know what man you talking about." ([*Id*. at] 18-20).

[Appellant] then called the man in question on Dorothy's phone, spoke to him, threw Dorothy's phone, and continued to attack Dorothy; [Appellant] sliced open Dorothy's face by punching her with the rings on her fingers. (*Id*. at 13). Dorothy's eye started closing and stinging. (*Id*.). Dorothy hit [Appellant] back in the chest with her house phone to defend herself. (*Id*. at 52). Dorothy then escaped to the kitchen and grabbed a kitchen knife; she thought about fending off [Appellant] with the kitchen knife but decided against it because she did not want to accidentally kill her sister. (*Id*. at 22, 25). Instead, she told [Appellant] to leave. (*Id*.). [Appellant] left Dorothy's house. (*Id*. at 25). As she left, [Appellant] asked Dorothy if she was going to call the police and Dorothy responded that she was. (*Id*. at 26). [Appellant] left with the gun, and Dorothy tried to get [Appellant's] license plate number for the police but could not see because there was blood, swelling, and incredible pain in her eyes. (*Id*. at 24, 45). Dorothy called the police, and the police then rushed her to the hospital. (*Id*. at 13).

At the hospital, Dorothy testified that she was treated for a fractured eye socket and a fractured nose, and she also received four stitches under her right eye. (N.T. 9/8/17 at pp. 17, 24). Dorothy had bruises all up and down her chest and arm. (*Id*. at 18). She also testified that she had damage to the muscles under her eye. (*Id*. at 28). The pain in her eyes did not cease for two weeks after the incident. (*Id*. at 29). She had trouble seeing at first and her doctor told her that her eyes would take a while to heal. (*Id*. at 30). At trial, her medical records were admitted and revealed that she was officially diagnosed with "a periorbital contusion on her left eye, a facial fracture, a closed head injury, and facial laceration." (*Id*. at 27). Photographs of Dorothy's

injuries on the day after the incident were entered into evidence, including some of her face and one of bruising on her chest and arm. (*Id*. at 32, 34). Dorothy concluded that she still loved her sister but remains confused by her actions. (*Id*. at 35).

Detective Cherie Savoy testified that on August 29, 2016, at around 1:40am, she met with Dorothy Howell at Dorothy's home in Philadelphia. (N.T. 10/20/17 at p. 7). At that time, Dorothy was crying, terrified, and badly beaten. (*Id*. at 7). Her face was bleeding from under her eye and from her forehead. (*Id*.). Dorothy told Detective Savoy that her sister came to her house, accused her of talking to a man, repeatedly punched her in the face, and pulled a small black and yellow firearm (possibly a .22 caliber) on her. (*Id*. at 9, 14, 15). She gave the officer specific information, including her sister's name, address, date of birth, and car description. (*Id*. at 8, 11). The detective then gave [Appellant's] information to other officers and personally transported Dorothy to the hospital. (*Id*. at 12).

Officer Timothy Carroll testified that on August 29, 2016, around 1:30am, he received a radio call with information about a suspect ([Appellant]) who had just committed an aggravated assault. (N.T. 10/20/17 at p. 18). Officer Carroll found the uninjured [Appellant] on [Appellant's] street at 3:05am and arrested her. (*Id*. at 20-21).

Trial Court Opinion, 10/26/18, at 3-5.

On October 20, 2017, at the conclusion of a nonjury trial, Appellant was convicted of aggravated assault, prohibited possession of a firearm, firearms carried without a license, firearms carried in public in Philadelphia, possession of an instrument of a crime, terroristic threats, simple assault, and REAP.[1] On March 19, 2018, the trial court sentenced Appellant to serve a term of incarceration of two to four years with three years of consecutive probation

_____

[1] 18 Pa.C.S. §§ 2702(a), 6105, 6106, 6108, 907(a), 2706(a)(1), 2701(a)(1), and 2705.

J-S32013-19

for the aggravated assault conviction and the three years of concurrent probation for the conviction of prohibited possession of a firearm. The trial court imposed no further penalty for the remaining convictions. This timely appeal was filed on April 17, 2018.[2] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1. Did the Trial Court err in finding the evidence admitted at trial was sufficient to sustain the … verdict for count 1, aggravated assault under Pa Crimes Code section 2702(A) as the evidence failed to prove causation or attempt to cause [serious] body injury?

2. Did the Trial Court err in finding the evidence admitted at trial was sufficient to sustain the … verdict for count 8, recklessly endangering another person under Pa. Crimes Code section 2705 as the evidence failed to prove that [Appellant] had an actual frame or receiver of a firearm?

3. Did the Trial Court err in finding the evidence admitted at trial was sufficient to sustain the … verdict for count 2, possession of firearm prohibited under Pa. Crimes Code section 6105(A1) as the

_____

[2] We note that the notice of appeal indicated that Appellant was appealing "from the Order, dated March 29, 2018." Notice of Appeal, 4/17/18, at 1. However, upon review of the trial court's docket, this Court determined that there is no indication of an order being entered on March 29, 2018. On August 27, 2018, we issued a rule to show cause why the appeal should not be quashed as having been taken from a purported order that is not entered upon the appropriate docket of the trial court. On August 28, 2018, Appellant's counsel filed a response to the rule to show cause. In the response, counsel explained that the appeal was from the order entering judgment of sentence that was filed on March 19, 2018, and that counsel mistakenly typed March 29. Response, 8/28/18, at 1. In addition, Appellant requested amendment to the notice of appeal to correct the clerical error. Accordingly, we have corrected the caption to reflect that this appeal has been taken from the judgment of sentence entered on March 19, 2018.

evidence failed to prove that [Appellant] had an actual frame or receiver of a firearm?

4. Did the Trial Court err in finding the evidence admitted at trial was sufficient to sustain the … verdict for count 3, firearms not to be carried without license under Pa. Crimes Code section 6106(A1) as the evidence failed to prove that [Appellant] had an actual frame or receiver of a firearm?

5. Did the Trial Court err in finding the evidence admitted at trial was sufficient to sustain the … verdict for count 4, carry firearms [in] public in Philadelphia under Pa. Crimes Code section 6108 as the evidence failed to prove that [Appellant] had an actual frame or receiver of a firearm?

6. Did the Trial Court err in finding the evidence admitted at trial was sufficient to sustain the … verdict for count 5, possession of an instrument of crime under Pa. Crimes Code section 907(A) as the evidence failed to prove that [Appellant] had an actual frame or receiver of a firearm?

Appellant's Brief at 4-5 (renumbered for ease of disposition).

Appellant first argues that there was insufficient evidence to support her conviction of aggravated assault. Appellant's Brief at 10. Appellant states that "[n]o deadly weapon was used, and the repeated punches from [Appellant] did not cause or attempt to cause serious bodily injury." *Id*.

Our standard of review is well established:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder['s]. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no

probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Estepp***, 17 A.3d 939, 943-944 (Pa. Super. 2011).

The crime of aggravated assault is set forth at 18 Pa.C.S. § 2702 and provides in relevant part as follows:

> **(a) Offense defined.—**A person is guilty of aggravated assault if he:
>
>> (4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]

18 Pa.C.S. § 2702(a)(4). Serious bodily injury is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

The trial court addressed Appellant's challenge to the sufficiency of the evidence with the following thorough discussion:

> [Appellant] argues that the evidence did not demonstrate serious bodily injury for the purposes of her aggravated assault conviction. However, [Appellant] confuses the standards required for her conviction. [Appellant] was not convicted of a first degree felony which would require attempted serious bodily injury. [Appellant] was convicted of a second degree felony, which states that a person is guilty when he attempts to cause bodily injury to another with a deadly weapon. 18 Pa.C.S.A. § 2702(a)(4).[10] In the present case, a reasonable fact-finder could conclude that

[Appellant] attempted to cause bodily injury with a deadly weapon: therefore the evidence is sufficient to hold [Appellant] guilty of aggravated assault.

> [10] Bodily injury includes any "impairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301.

To prove aggravated assault under this subsection,

> [The] Commonwealth must demonstrate both a substantial step plus an intent to cause bodily injury to another with a weapon. The inquiry here is whether the surrounding circumstances evidenced defendant's intent to commit bodily injury with a weapon. . . . We glean the following from these cases *vis a vis* the attempt aspect of §§ 2702(a)(1) and (a)(4). First, the resolution of each case is a function of the circumstances of the case as determined by the fact-finder. Second, a substantial step for purposes of aggravated assault-attempt under §§ 2702(a)(1) or (a)(4) can involve little or no injury to the victim. Third, we view all the evidence in the light most favorable to the verdict winner, giving that party the benefit of all reasonable inferences to be drawn therefrom. Fourth, with respect to the intent requirement of each section, we examine the defendant's words and conduct to determine whether the record supports a finding of the requisite intent.

*Commonwealth v. Gruff*, 822 A.2d 773, 778-79 (Pa. Super. 2003) (citations omitted). Any firearm-loaded or unloaded-is a deadly weapon for the purposes of this statute. 18 Pa.C.S.A. § 2301. The mere act of pointing a gun at someone is not sufficient to support an aggravated assault conviction. *Commonwealth v. Sanders*, 627 A.2d 183, 187 (Pa. Super. 1993). However pointing a gun with something more-for example, pointing a gun combined with a verbal threat-can be enough. *Commonwealth v. Matthew*, 909 A.2d 1254, 1259 (Pa. 2006).

In *Commonwealth v. Matthew*, the Court found that there was sufficient evidence to find aggravated assault when a defendant pointed a gun at the victim, turned away to search his car, told the victim that he was going to kill him, then ran away

- 7 -

from the victim.[11] 909 A.2d 1254, 1259 (Pa. 2006). In coming to this conclusion, **Matthew** specifically asserted that a conviction should not be found to lack sufficient evidence just because a defendant had an opportunity to injure the victim with his deadly weapon but did not. **Id**. at [1258]. Instead, courts should follow a totality of the circumstances test. **Id**. (re-affirming **Commonwealth v. Alexander**, 383 A.2d 887 (Pa. 1978)).

[11] This case was based off a conviction for Aggravated Assault under 18 Pa.C.S. § 2702(a)(1): However, its rationale was based on two cases concerning convictions under 18 Pa.C.S. § 2702(a)(4).

In **Commonwealth v. Gruff**, the defendant held a loaded rifle with an attached bayonet to the victim's throat and said, "I just ought to kill you." 822 A.2d 773, 774 (Pa. Super. 2003). This was deemed sufficient evidence of attempted serious bodily injury at that "critical moment" even though the victim felt the bayonet was removed from his neck and ran away and the defendant did not follow. **Id**. at 780; **See also Commonwealth v. Sanders**, 627 A.2d 183, 187 (Pa. Super. 1993) (holding sufficient evidence where defendant pointed a loaded gun at the victim and threatened to shoot him before victim grabbed the defendant's wrist and forced the gun from him).

In **Commonwealth v. Fortune**, the defendant pointed a gun at victim and said "If you don't let go of the keys, I'm going to blow your head off." 68 A.3d 980, 982 (Pa. Super. 2013).[12] The victim then gave the defendant her keys and ran away. **Id**. Though the defendant argued on appeal that his threat was conditional, the court held that there was still sufficient evidence of aggravated assault: a reasonable jury could conclude that the threat and point of the gun amounted to evidence of intent and a substantial step towards serious bodily injury. **Id**. at 987.

[12] This case also focused on Aggravated Assault under 18 Pa.C.S. § 2702(a)(1): However, its rationale was based on the **Alexander**/**Matthew** totality test which is commonly used for both 2702(a)(1) and (a)(4).

In the present case, [Appellant] pointed a gun at Dorothy-whom she had just finished severely beating-and threatened her life. (N.T. 9/8/17 at p. 20). Dorothy described-both on the night of the incident and to the court-how [Appellant] pulled a small,

black and yellow, .22 caliber gun out of her purse and pointed it at Dorothy from only one or two feet away. (*Id*. at 19, 20, 22; N.T. 10/20/17 at pp. 14-15). Then, with a "crazy–looking" expression, [Appellant] yelled "shut the F up . . . before I blow your head off." (N.T. 9/8/17 at pp. 18-21). Dorothy expressed how the gun could have killed her at this point. (*Id*. at 20). [Appellant] only left after Dorothy had escaped her grip and after she had grabbed a kitchen knife to defend herself. (*Id*. at 22, 46). If Dorothy had not taken this action, this encounter could have ended much more violently than it already did.

Here, [Appellant's] substantial step and intent towards causing bodily injury to the victim with a deadly weapon can be observed through her "words and conduct" as advised by *Gruff*, 822 A.2d at 779. By severely beating Dorothy (despite the fact that Dorothy was her sister, whose husband was in the hospital and grandson had just passed away), [Appellant] demonstrated her intent to cause her bodily injury. (N.T. 9/8/17 at pp. 11-14). [Appellant] beat Dorothy ferociously enough (with rings on her fingers) to cause multiple fractures and stiches to her face and bruising all over her body. (*Id*. at 24). Additionally, [Appellant] demonstrated these elements through her threat to "blow [Dorothy's] head off" and the fact that she pointed a gun at Dorothy from merely a foot or two away. (*Id*. at 18, 22).

Although [Appellant] erroneously argues that there was insufficient evidence for aggravated assault because there was no serious bodily injury, there was ample evidence of attempted bodily injury by deadly weapon. Therefore, there was sufficient evidence for second-degree felony aggravated assault.

Trial Court Opinion, 10/26/18, at 6-9 (footnote omitted).

We have thoroughly reviewed the certified record before us on appeal, and we agree with the trial court's determination that the Commonwealth presented sufficient evidence to establish beyond a reasonable doubt that Appellant committed the crime of aggravated assault. Immediately after physically beating the victim, Appellant drew a pistol, pointed it at the victim, and verbally threatened her. The fact that Appellant did not pull the trigger

is of no moment.  Accordingly, Appellant's claim challenging the sufficiency of the evidence to support the crime of aggravated assault lacks merit.

Appellant next argues that the Commonwealth failed to present sufficient evidence to support the conviction of REAP.  Appellant's Brief at 14-15.  Appellant asserts that a conviction of REAP "requires proof that the firearm was loaded and therefore capable of causing harm."  *Id*. at 15. We disagree.

Our Crimes Code defines REAP as follows:

> A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.

18 Pa.C.S. § 2705.  Section 2705 is satisfied where a defendant's conduct "places or may place another person in danger of death or serious bodily injury."  18 Pa.C.S. § 2705.  Further, we have held that "[t]he crime of REAP is a crime of assault which requires the creation of danger.  As such, there must be an actual present ability to inflict harm. . . .  [T]he mere apparent ability to inflict harm is not sufficient.  Danger, and not merely the apprehension of danger, must be created." *Commonwealth v. Reynolds*, 835 A.2d 720, 727-728 (Pa. Super. 2003) (internal quotation marks and citations omitted).  Under the plain terms of the statute, a REAP conviction is supportable even where the victim suffered no actual injury.  *See Commonwealth v. Rahman*, 75 A.3d 497, 502-503 (Pa. Super. 2013) (evidence was sufficient to support REAP conviction where the defendant

"thr[ew] punches at [a police officer] on a stairwell on a crowded balcony next to a glass divide;" although the officer did not actually fall down the stairs, the evidence was sufficient to place the officer "in danger of death or serious bodily injury" because the defendant's actions "easily could have caused [the officer] to lose his footing and fall down the stairs").

The trial court aptly addressed Appellant's challenge to the sufficiency of the evidence with regard to the REAP conviction as follows:

> In the present case, as discussed above, the evidence established that [Appellant] held down the sixty-one-year-old victim, Dorothy, and repeatedly punched her in the face and head, breaking her eye socket and nose. (N.T. 9/8/17 at p. 24). [Appellant] wore costume rings on her fingers, which sliced open … Dorothy's face and resulted in her requiring stitches. (*Id*.). Dorothy was in excruciating pain and had limited vision for a "long time" after this event. (*Id*. at 24, 29). [Appellant] also punched her in the chest and arm, resulting in pain and bruising. (*Id* at 29). [Appellant's] actions easily could have cost Dorothy her eyes and her vision. Therefore, this evidence could reasonably lead a fact-finder to conclude that [Appellant] is guilty of recklessly performing an action which may cause serious bodily injury.

Trial Court Opinion, 10/26/18, at 10 (footnote omitted).

Here, regardless of whether the firearm that Appellant pointed at the victim was loaded, the remaining facts of the incident were sufficient to support the conviction of REAP. Appellant, while wearing rings on her hand, repeatedly punched the victim in the head, face, chest, and arms. Consequently, the victim suffered fractures to her eye socket and nose. In addition, she required stitches under her eye and suffered vision loss. The trial court, sitting as finder of fact, chose to believe the evidence presented by

the Commonwealth, and we will not substitute our judgment for that of the trial judge. Under the totality of the circumstances, the evidence presented at the trial, viewed in the light most favorable to the Commonwealth, is sufficient to sustain Appellant's conviction of REAP.

In her final four issues, Appellant argues that there was insufficient evidence to support her convictions of possession of a firearm by a prohibited person, firearms not to be carried without a license, carrying firearms publicly in Philadelphia, and possession of an instrument of crime. Appellant's Brief at 10-14. However, Appellant did not present these issues to the trial court in her Pa.R.A.P. 1925(b) statement as required.

Our Courts have consistently ruled that, where a trial court directs a defendant to file a concise statement pursuant to Pa.R.A.P. 1925, any issues not raised in that statement shall be waived. ***Commonwealth v. Bullock***, 948 A.2d 818, 823 (Pa. Super. 2008) (citing ***Commonwealth v. Lord***, 719 A.2d 306, 308 (Pa. 1998)). In ***Commonwealth v. Butler***, 812 A.2d 631, 633 (Pa. 2002), our Supreme Court reaffirmed its holding in ***Lord*** and stated: "In ***Lord***, however, this Court eliminated any aspect of discretion and established a bright-line rule for waiver under Rule 1925 …. Thus, waiver under Rule 1925 is automatic." ***See also Commonwealth v. Oliver***, 946 A.2d 1111, 1115 (Pa. Super. 2008) (noting that ***Lord*** "requires a finding of waiver whenever an appellant fails to raise an issue in a court-ordered Pa.R.A.P. 1925(b) statement").

Rule 1925 is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal. "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." **Commonwealth v. Dowling**, 778 A.2d 683, 686 (Pa. Super. 2001). In addition, we are mindful that claims not raised before the trial court are waived. **See Commonwealth v. Ryan**, 909 A.2d 839, 845 (Pa. Super. 2006) (citing **Commonwealth v. Gordon**, 528 A.2d 631, 638 (Pa. Super. 1987)) (reiterating that "[a] theory of error different from that presented to the trial jurist is waived on appeal, even if both theories support the same basic allegation of error which gives rise to the claim for relief").

Our review of the certified record reflects that on April 27, 2018, the trial court issued an order directing Appellant to file a Pa.R.A.P. 1925(b) statement within twenty-one days. The record further reveals that, after the grant of multiple extensions of time, Appellant filed her Pa.R.A.P. 1925(b) statement on September 5, 2018. Appellant's Rule 1925(b) statement contains a total of four issues. The fourth issue is the only issue that raised a claim pertaining to the convictions for the firearm violations, and it provides as follows:

> 4. The Court erred and denied [Appellant] the due process and equal protection guaranteed to her by state and federal constitutions, because the verdicts for the charges of Possession Of Firearm Prohibited (18 § 6105 §§ A1), Firearms Not To Be Carried W/O License (18 § 6106 §§ Al), Carry Firearms Public In Phila (18 § 6108), and Poss Instrument Of Crime W/Int (18 § 907 §§ A) were against the weight of the evidence. The verdicts on these charges were so contrary to the evidence as to shock one's

- 13 -

sense of justice, because there was no evidence whatsoever to corroborate and substantiate the complaining witness testimony about a firearm.

Pa.R.A.P. 1925(b) Statement, 9/5/18, at 2.

Thus, Appellant properly preserved for review claims challenging the weight of the evidence to support her firearm convictions. Although Appellant challenged the sufficiency of the evidence to support her convictions of aggravated assault and REAP in her Rule 1925(b) statement, Appellant never specifically raised to the trial court any claims that there was insufficient evidence to support her firearm convictions. Indeed, the two arguments challenging the weight of the evidence and sufficiency of the evidence are distinct. *See Commonwealth v. Davis*, 799 A.2d 860, 864 (Pa. Super. 2002) ("[w]eight of the evidence and sufficiency of the evidence are discrete inquiries"). Therefore, because Appellant now attempts to raise claims challenging the sufficiency of the evidence to support the various firearm convictions, we conclude that these arguments are waived because Appellant failed to present these specific issues in her Rule 1925(b) statement.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/17/19

- 14 -